AO 91 (Rev. 11/11) Criminal Complaint     AUSA Mary Katherine McClelland (312) 353-0517

**FILED**
5/5/2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER: 23CR278 |
| v. | **UNDER SEAL** |
| PIERRE LAVELL PERKINS | |

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief:

On or about April 25, 2023, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 922(g)(1) | unlawful possession of a firearm by a felon |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

/s/ Michael P. Donahue (MDW with permission)
MICHAEL P. DONAHUE
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: May 5, 2023

*Judge's signature*

City and state: Chicago, Illinois     M. DAVID WEISMAN, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**AFFIDAVIT**

I, MICHAEL P. DONAHUE, being duly sworn, state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I have been so employed since approximately March 2020. From approximately July 2017 until my employment as a Special Agent, I served as a Task Force Officer with the ATF, while employed as a Police Officer for the Chicago Police Department ("CPD"). I began my tenure as a Chicago Police Officer in November 2012.

2. As part of my duties as an ATF Special Agent, I investigate criminal violations relating to criminal enterprises and gangs, including criminal violations of federal firearm laws. I have participated in numerous investigations that involve the illegal purchase, trafficking, possession, and use of firearms and ammunition during, and in relation to, crimes of violence. I have also participated in the execution of multiple federal arrest warrants.

3. This affidavit is submitted in support of a criminal complaint alleging that Pierre Lavell PERKINS ("PERKINS") has violated Title 18, United States Code, Section 922(g)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging PERKINS with unlawful possession of a firearm by a felon, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I

1

believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

4. The statements in this affidavit are based on my personal knowledge; my own observations and actions; information I have received from other law enforcement personnel; information received from persons with knowledge regarding relevant facts, including confidential informants; information obtained pursuant to search warrant; law enforcement reports; a review of publicly available social media pages; law enforcement databases; court records; my training and experience; and the training and experience of other law enforcement personnel with whom I work.

## I. FACTS SUPPORTING PROBABLE CAUSE

5. In summary, as set forth in more detail below, on or about April 25, 2023, a confidential informant ("CI-2")[1] purchased six firearms from PERKINS, who is a convicted felon.

---

[1] CI-2 has two felony convictions for narcotics offenses. CI-2 has been cooperating with ATF since in or about 2006. To date, ATF has paid CI-2 approximately $251,725.16 in exchange for his/her assistance in this investigation and other investigations since 2006. CI-2 has provided both ATF and the Chicago Police Department with information that has been proven reliable in the past and that has resulted in the recovery of narcotics, firearms, and ammunition. Information provided to law enforcement by CI-2 has been further corroborated by recorded conversations and controlled purchases of firearms and narcotics.

6. Between approximately April 21, 2023, and April 25, 2023, CI-2 engaged in recorded conversations,[2] via phone calls and text messages, with PERKINS, who was using phone number 615-XXX-7857 ("Subject Phone 1").[3]

7. Based on my review of CI-2's recorded text messages, on April 21, 2023, at approximately 9:17 p.m., CI-2 sent outgoing texts to PERKINS at Subject Phone 1 which stated:

> "When you get some more toys [firearms] in send me some pics"
> "An pricing[.]"

8. Based on my review of CI-2's recorded text messages, within minutes, PERKINS replied via text message from Subject Phone 1:

> "Ok"
> "I got some, I'll send pics and prices in the morning[.]"

---

[2] CI-2's conversations with PERKINS between April 21, 2023, and April 25, 2023, were consensually recorded, unless otherwise noted herein. Some of the consensually recorded conversations have been summarized in this Affidavit. The summaries do not include all statements made or topics covered during the recorded conversations. To the extent that portions of the consensually recorded conversation appear in quotations herein, the words appearing within quotation marks are based on draft summaries of the consensually recorded conversations, and not on final transcripts of the conversations. In some instances, I have included my interpretations of the quoted language in brackets. My interpretations are based on the contents and context of the consensually recorded conversations, my training and experience as a Special Agent, my knowledge of this investigation as whole, information provided by other Special Agents and law enforcement officers assigned to this investigation, and information provided by CI-2.

[3] Law enforcement's identification of PERKINS as the user of Subject Phone 1 is based on the fact that, as described in this affidavit, PERKINS appeared at specified times and locations to sell firearms to CI-2 consistent with the discussions had between CI-2 and the user of Subject Phone 1. CI-2 had previously engaged in recorded calls and text message conversations with PERKINS via Subject Phone 1 and 731-XXX-2678 ("Subject Phone 2") to arrange meetings with PERKINS in person to purchase firearms from him on April 13, 2023, and April 18, 2023.

9. Based on my review of CI-2's recorded text messages, on April 22, 2023, at approximately 8:58 a.m., PERKINS, using Subject Phone 1, sent CI-2 a text message that stated, "1600-800-800-1200-800-1600 [$1,600-$800-$800-$1200-$800-$1600] I'll take 62 [$6,200] if you get them all[.]" along with six photographs of firearms, which are included below:





10. Based on my training and experience, the contents and context of this conversation, and my investigation in this case, during this conversation, I understood CI-2 to be asking to purchase firearms from PERKINS, with PERKINS sending photos of the firearms he had available for sale along with their prices.

4

PERKINS offered to sell all of the firearms to CI-2 for a reduced price of $6,200, if CI-2 purchased all six firearms available.

11. On April 22, 2023, at approximately 11:28 a.m., at the direction of agents, CI-2 placed an outgoing recorded call to PERKINS at Subject Phone 1. Based on my review of that recording, in summary, during the phone call, PERKINS explained the price of differences between each weapon and told CI-2 he would sell CI-2 all six firearms for $6,200. CI-2 and PERKINS agreed to meet on April 25, 2023.

12. On April 25, 2023, CI-2 met with agents at a predetermined location. Agents searched CI-2 and CI-2's vehicle for firearms, excess currency, and contraband, and found none. Agents gave CI-2 prerecorded law enforcement funds to purchase the firearms, and equipped CI-2 with electronic transmitters and electronic devices which would record video and audio. Agents also gave CI-2 a black duffle bag in which to store the purchased firearms. Without losing sight of CI-2, agents followed CI-2 in his/her vehicle from the predetermined meeting location to the location of the controlled purchase.

13. According to agents surveilling the controlled purchase, CI-2 drove to the Greyhound Bus Station, located on the 600 block of West Harrison Street, in Chicago, Illinois. CI-2 arrived and parked in front of the entrance on the north side of the street. At approximately 8:58 a.m., surveillance agents, observed PERKINS exiting the Greyhound Bus Station on foot and approaching CI-2's vehicle.

14. According to agents surveilling the controlled purchase, PERKINS was wearing blue jeans and a blue jacket over a dark-colored hooded sweatshirt, and carrying a black duffle bag and a small backpack.

15. According to agents surveilling the controlled buy and my review of the video and audio recordings of the controlled buy, PERKINS[4] entered CI-2's vehicle on the front passenger side. As CI-2 agreed with agents prior to the buy, CI-2 then drove to the 600 block of South Desplaines Street, in Chicago, Illinois, under surveillance by agents.

16. According to my review of the video and audio recordings of the controlled buy, PERKINS entered CI-2's vehicle and removed a face mask that he was wearing. Once inside the vehicle, PERKINS removed one firearm at time from the black duffle bag that agents observed him carrying, handing each to CI-2. CI-2 then placed the firearms into the black duffle bag previously provided to him/her by investigators.

17. According to my review of the video recordings of the controlled buy and my recovery of the firearms from CI-2 after the buy, five of the six firearms were contained in firearm cases when PERKINS provided them to CI-2.

18. According to my review of the video and audio recordings of the controlled buy, after receiving the firearms, CI-2 handed PERKINS $6,200, which PERKINS counted while inside CI-2's vehicle. During their time in CI-2's vehicle, CI-

---

[4] Based on my comparison of the video recording of the controlled buy to PERKINS's Tennessee driver's license photograph, the person who approached CI-2's vehicle and entered it was PERKINS.

6

2 and PERKINS discussed CI-2 purchasing additional firearms in the future, and CI-2 asked PERKINS for specific features on future firearms.

19. For example, according to my review of the video and audio recordings of the controlled buy, CI-2 asked PERKINS if he, "Could get extendos?" and PERKINS replied, "For the FNs [firearms manufactured by Fabrique Nationale]? Yea." Based on my training and experience, the context and contents of the conversation, and my investigation in this case, I know "extendos" to be a term that refers to extended magazines, which can hold a higher capacity of ammunition.

20. Based on my review of the video and audio recordings of the controlled buy, during their conversation CI-2 told PERKINS, "Get some bigger joints [firearms] though." PERKINS replied, "When you say bigger what you mean, though . . . Like size of it [the firearm], or the caliber size?" CI-2 replied, "The caliber size." PERKINS stated, "Ok, ok, so you want, like, 40s [.40-caliber firearms] and shit. . . some 45s [.45 caliber firearms][?]" CI-2 confirmed that he/she was referring to larger caliber firearms. Based on my training and experience, the context and contents of the conversation, and my investigation in this case, when CI-2 asked about purchasing larger-caliber firearms, PERKINS clarified that CI-2 was referring to a larger caliber of firearm, rather than a larger firearm, and then gave .40-caliber and .45 caliber weapons as examples.

21. Based on my review of the video and audio recordings of the controlled buy, after CI-2 and PERKINS completed the sale of the firearms and finished their

7

conversation, PERKINS exited CI-2's vehicle from the front passenger side, while carrying the same black duffle bag and small backpack he entered the vehicle with.

22. At approximately 9:07 a.m., surveillance agents observed PERKINS exit CI-2's vehicle and walk back toward the Greyhound Bus Station. CI-2 drove away from the 600 block of South Desplaines Street under surveillance. CI-2 then met with agents at a predetermined location and turned over the six firearms purchased from PERKINS. Agents again searched CI-2 and CI-2's vehicle for firearms, excess currency, and contraband, and found none.

23. Based on my review of surveillance video footage from the Greyhound Bus Station, at approximately 10:25 a.m. on April 25, 2023, following the controlled buy described above, PERKINS boarded a bus. Included below is a screenshot from the Greyhound Bus Station video surveillance, with PERKINS circled in red:



24. Based my review of Greyhound records, Greyhound issued a boarding pass for "Pierre Perkins" for a Greyhound bus departing Nashville, Tennessee, at approximately 10:15 p.m., on April 24, 2023, and arriving in Chicago, Illinois, at approximately 8:05 a.m., on April 25, 2023. Greyhound also issued a boarding pass for "Pierre Perkins" for a Greyhound bus which departed Chicago, Illinois, at approximately 10:30 a.m., on April 25, 2023, and arriving in Nashville, Tennessee, at approximately 9:05 p.m., on April 25, 2023.

25. Based on my review of a law enforcement database and Tennessee court records, PERKINS has three felony convictions:

9

  a. On April 20, 2006, PERKINS was convicted of attempted burglary – other than habitation in the Criminal/Circuit Court of Lauderdale County, Tennessee, and was sentenced to one year of supervised probation.

  b. On February 24, 2012, PERKINS was convicted of promoting the manufacture of methamphetamine in the Criminal/Circuit Court of Shelby County, Tennessee, and received a suspended sentence of one year, nine months, and twenty-one days.

  c. On August 12, 2019, PERKINS was convicted of identity theft and fraudulent use of a credit card in the Criminal/Circuit Court of Williamson County, Tennessee, and sentenced to two years of supervised probation.

26. Based on my review of a certified transcript from PERKINS's change of plea hearing on August 12, 2019, in connection with the charge identified above in paragraph 25(c), PERKINS was notified by the Criminal/Circuit Court of Williamson County, Tennessee, that he was pleading guilty to a felony charge that was punishable by a term of imprisonment exceeding one year. During the hearing, the court and PERKINS had the following exchange:

> THE COURT: So in Count 1 you will plead guilty to Identity Theft, have a sentence of two years, which will be suspended and you will be placed on supervised probation and there's conditions of that and we will talk about that. And then in Count 2, you will be pleading guilty to fraudulent use of a credit card, have a two year sentence, with supervised probation, these run together for a total sentence of two years. These are both felonies, you understand that correct?
>
> MR. PERKINS: Yes, Your Honor.
>
> . . .

THE COURT: As a convicted felon, you lose certain constitutional rights. Such as the right to bear arms, meaning you can never possess firearms or ammunition; do you understand that?

MR. PERKINS: Yes, Your Honor.

27. On May 2, 2023, an ATF Special Agent examined the purchased firearms to determine the origin and status of the firearms, and whether they traveled in interstate or foreign commerce prior to PERKINS's possession of them on April 25, 2023. Based on his training and experience, and his examination of the firearms, this agent concluded that ATF had purchased the following firearms from PERKINS:

    a.    A HS Product Springfield, XD-9, 9mm semi-automatic firearm bearing serial number XD857340, which traveled in foreign commerce prior to CI-2's purchase of it from PERKINS on April 25, 2023;

    b.    A Glock, Model 23, .40 caliber semi-automatic firearm bearing serial number BXZY476, which traveled in foreign commerce prior to CI-2's purchase of it from PERKINS on April 25, 2023;

    c.    A Spike's Tactical, Model ST15, 5.56mm semi-automatic firearm bearing serial number 174608, which traveled in interstate commerce prior to CI-2's purchase of it from PERKINS on April 25, 2023;

    d.    A Fabrique Nationale, Model Five-SeveN, 5.7x28mm semi-automatic firearm bearing serial number 386150010, which traveled in interstate commerce prior to CI-2's purchase of it from PERKINS on April 25, 2023;

    e. A Walther, Model PPS, 9mm semi-automatic firearm bearing serial number BA6148; which traveled in foreign commerce prior to CI-2's purchase of it from PERKINS on April 25, 2023; and

    f. A HS Product Springfield, XD-9 Tactical semi-automatic firearm bearing serial number GM734563, which traveled in foreign commerce prior to CI-2's purchase of it from PERKINS on April 25, 2023.

**II. CONCLUSION**

  28. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, on or about April 25, 2023, Pierre Lavell PERKINS, knowing that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess, in and affecting interstate commerce, a firearm, which had traveled in interstate or foreign commerce prior to his possession of that firearm, in violation of Title 18, United States Code, Section 922(g)(1).

                FURTHER AFFIANT SAYETH NOT.

                /s/ Michael P. Donahue (MDW with permission)
                MICHAEL P. DONAHUE
                Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives

SWORN TO AND AFFIRMED by telephone on this 5th day of May, 2023.

_____
Honorable M. DAVID WEISMAN
United States Magistrate Judge